**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY WINDELL LEE, | 1:05-cv-00802-OWW-WMW (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| A.K. SCRIBNER, et. al., | (Doc. 20) |
| Defendants. | |

**I.      SCREENING ORDER**

Bobby Windell Lee ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis. Plaintiff filed his Complaint on June 20, 2005. (Doc. 1.) The Court screened the Complaint and dismissed it with leave to amend. (Doc. 16.) Upon being granted extension of time to amend, Plaintiff filed the First Amended Complaint. (Doc. 20.)

**A.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been
1

1 paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

**B.     Summary of Plaintiff's Complaint**

At the time of the issues complained of in his complaint, Plaintiff was a state prisoner at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California. Plaintiff names four defendants in this action: SATF Warden A.K. Scribner; SATF Associate Warden D. Ortiz; Correctional Counselor Cordero; and Dr. Wagner.

Plaintiff generally alleges that he was wrongly held in Ad-Seg and was denied his psychotic medications. Plaintiff delineates four claims for relief: (1) due process of law/equal protection of the law under the Fourteenth Amendment; (2) deliberate indifference, cruel and unusual punishment, and denial of adequate medical attention under the Eighth Amendment; (3) confiscation of legal transcripts, intentionally obstructing court access, "taking" of his property violations under the Fifth Amendment; and (4) state claims under the California Penal Code and the CDC California Code of Regulations.

Plaintiff may be able to amend to correct deficiencies in his pleading so as to state cognizable claims. Thus, he is being given the applicable standards based on his delineated

claims for relief and final leave to file a second amended complaint.

### C. Pleading Requirements

#### 1. *Federal Rule of Civil Procedure 8(a)*

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

#### 2. *Federal Rule of Civil Procedure 18(a)*

"The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The Court is unable to ascertain any relationship between Plaintiff's claims. Since this case has been pending for some length of time, the Court is providing Plaintiff with the applicable standards on all of his delineated claims such that Plaintiff might choose which *related* claim(s) to pursue in this action. All unrelated claims should be brought in separate actions. Plaintiff is advised that if he chooses to file a second amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

### 3. *Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

4

Plaintiff mentions M.T.A. Oneal, Jeanne Woodford, and Counselor Carriedo in his factual statement, but fails to list these individual as a defendant in the caption, or anywhere else in his complaint. If Plaintiff intends to pursue claims against M.T.A. Oneal, Jeanne Woodford, and/or Counselor Carriedo, he must appropriately identify them as defendants in this action. Further, Plaintiff should clarify the factual basis of upon which he feels each and every named defendant is responsible for any violation(s) of his constitutional rights, as his complaint must put each defendant on notice of Plaintiff's claims against him or her. See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004).

### 4. *Claims Against Supervisors*

Part of Plaintiff's claims against each named defendant are that they were responsible for the actions of their subordinates and/or that they had responsibilities to oversee the workings of various subordinates.

Plaintiff is advised that supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts indicating that any of the defendants knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so

deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646. Plaintiff allegations as to the personal participation by each named defendant are discussed in detail below.

### D. Claims for Relief

#### 1. Fourteenth Amendment

##### a. Due Process

Plaintiff alleges that Defendants Warden Scribner and Associate Warden Ortiz violated his rights to due process "by authoring false legal documents which illegally detained Plaintiff in Ad-Seg for (14) months." (Doc. 20, pg. 15.)

Plaintiff alleges that his due process rights have been violated in conjunction with his placement and retention in Ad-Seg. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983) – overruled on other grounds. The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt, 459 U.S. at 466-68. With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff is not entitled to procedural due process protections in a vacuum. In order to be entitled under federal law to any procedural due process protections, Plaintiff must first have a liberty interest at stake. Plaintiff has alleged no facts that establish the existence of a liberty interest in remaining free from Ad-Seg. Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in

freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted). Further, prisoners may be housed in Administrative Segregation to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. See Hewitt, 459 U.S. at 468.

Plaintiff alleges that on June 23, 2003, he was transferred to SATF and was placed in SATF's SHU based on his possible participation in an assault on staff at Salinas Valley State Prison (SVSP). (Doc. 20, pg. 9.) Plaintiff also alleges that Associate Warden Ortiz authored a document that indicated Plaintiff was not a patient in the "Mental Health Service Delivery System (MHSD)." (Id.) Plaintiff appeared before "IV-B SHU ICC" on July 3, 2003 and advised the committee that the officers were depriving him of his psychiatric medication. (Id. at pg. 10.) On July 24, 2003, Plaintiff informed "committee" that he was innocent of all charges and still being deprived of his psychiatric medication. (Id. at pg. 11.) On August 23, 2003, Plaintiff again appeared before ICC and explained he was being illegally held in Ad-Seg. (Id. at pg. 13.) Plaintiff alleges that, at this ICC hearing, the requested extension was amended from 180 days to 30 days; it was found that the C-file contained no evidence of a pending RVR to substantiate retaining Plaintiff in Ad-Seg; that absent locating that RVR, or a new "CDC 114-D and accompanying placement hearing," Plaintiff would have to be released from Ad-Seg; and that staff should ensure Plaintiff was "provided staff assistance preparatory to his next review." (Id. at pp. 13-14.) Plaintiff indicates that in June of 2004, he was issued his property/legal documents and prescription eye glasses that had been deliberately scratched on both lenses. (Id. at pg. 14.) Because Plaintiff has not established the existence of a liberty interest in remaining free from Ad-Seg, Plaintiff may not pursue a claim for relief under section 1983 for deprivation of procedural due process.

Further, even if Plaintiff had a liberty interest in remaining free from Ad-Seg, Plaintiff has alleged no facts that support his claim of being deprived of the procedural due process protections he was due. Plaintiff was informed of the reasons for his placement in Ad-Seg via the CDC-114 form, and Plaintiff was provided with periodic reviews following his placement in Ad-Seg. Thus, Plaintiff received all the notice he was due regarding his placement in Ad-Seg, and all the process he was due regarding his retention in Ad-Seg. Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986). Due Process does not require that Plaintiff be provided with "detailed written notice of charges . . ." or "a written decision describing the reasons for placing the prisoner in administrative segregation," and "due process does not require the disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation." Id.

In summary, because Plaintiff does not have a liberty interest in remaining free from Ad-Seg, Plaintiff was not entitled to any procedural due process protections, and may not, therefore, pursue a claim for relief for deprivation of procedural due process. Further, even if Plaintiff did have a liberty interest in remaining free from Ad-Seg, Plaintiff was provided with all of the process he was entitled to under federal law. That defendants may have failed to comply with state regulations is not grounds for relief under section 1983 for deprivation of due process. Plaintiff is entitled to very limited due process protections under federal law with respect to placement in Ad-Seg. See Toussaint, 801 F.2d at 1100-01. Accordingly, Plaintiff fails to state a cognizable claim for violation of his rights to due process against Warden Scribner and Associate Warden Ortiz.

Also, Plaintiff's allegations that C.C. Cordero violated his rights under the Fourteenth Amendment by initiating arrangements to have Plaintiff transferred back to SVSP where the alleged assault on staff occurred for retaliatory reasons do not state a cognizable claim. First, Plaintiff has no liberty interest in staying at a particular institution. See Meachum v. Fano, 427 U.S. 215, 224-227 (1976). Further, "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Thus, Plaintiff fails to state a cognizable claim for retaliation against C.C. Cordero as he fails to allege facts to address any of the required five elements.

### b. Equal Protection

Plaintiff alleges that Defendants Warden Scribner and Associate Warden Ortiz violated his rights to equal protection of laws "by authoring false legal documents which illegally detained Plaintiff in Ad-Seg for (14) months." (Doc. 20, pg. 15.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564. If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley, 375 F.3d at 944; Freeman v. City of

Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

Plaintiff's claims are not cognizable as, while Plaintiff alleges that he is African-American, he fails to allege any factual basis to conclude that the complained of actions by Defendants Warden Scribner and Associate Warden Ortiz were racially motivated and/or that Plaintiff's retention in Ad-Seg was not rationally related to a legitimate state purpose, or that some selective enforcement of a valid law or rule was based upon an impermissible motive.

### 2. *Eighth Amendment*

#### a. Cruel & Unusual Punishment

In his second claim for relief, Plaintiff alleges that C.C. Cordero subjected him to cruel and unusual punishment by taking steps to have Plaintiff transferred back to SVSP knowing that would place Plaintiff's life in danger (via retaliation) since Plaintiff had been accused of assaulting SVSP staff. (Doc. 20, pp. 6-7, 16.)

One who makes a claim of being subjected to cruel and unusual punishment must show that the state has created risk or inflicted pain pointlessly. "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (See Johnson v. Phelan, 69 F.3d 144, 147 (1995) citing: Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotations omitted) see also Rhodes v. Chapman, 452 U.S. 337 (1981); Wilson v. Seiter 501 U.S. 294, 289-300 (1991); Helling v. McKinney 509 U.S. 25 (1993).

Plaintiff states that, on June 23, 2003, he was transferred to the SATF, to be housed in the SHU, based on his possible participation in an assault on a Caucasian officer at SVSP. (Doc. 20, pg. 9.) Plaintiff alleges that he received "an incident package, which was approximately 100-150 pgs. 'There is no evidence indicating that Plaintiff participated in the alleged assault.' " (Doc. 20, pg. 15.) Plaintiff further alleges that C.C. Cordero subjected him to cruel and unusual punishment by taking steps to have Plaintiff transferred back to SVSP knowing that would place Plaintiff's life in danger (via retaliation) since Plaintiff had been accused of assaulting SVSP staff. (Doc. 20, pp. 6-7, 16.)

Given that Plaintiff alleges that he was exonerated of any involvement in the alleged

10

assault, Plaintiff should, but fails to, explain how transfer back to SVSP would place his life in danger. Further, Plaintiff alleges that C.C. Cordero took steps to have Plaintiff transferred back to SVSP, but does not allege whether he was indeed transferred back to SVSP, or any likelihood thereof. The Court notes that Plaintiff is currently housed at Pelican Bay State Prison. Plaintiff's claim of being subjected to cruel and unusual punishment based on C.C. Cordero taking steps to have Plaintiff transferred back to SVSP are not cognizable and speculative at best.

### b. Deliberate Indifference to Serious Medical Needs

In his second claim for relief, Plaintiff also alleges that Dr. Wagner was deliberately indifferent to his medical needs by depriving Plaintiff of his prescribed psychotic medication which caused Plaintiff to suffer mentally and physically. (Doc. 20, pg. 16.)

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (*quoting* Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Liberally construing Plaintiff's allegations that he was being denied his "psychotic medication" allows for an inference that Plaintiff had a serious medical (psychiatric) need.

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once

prescribed. Estelle, 429 U.S. at 104-05. "However, the officials' conduct must constitute ' " 'unnecessary and wanton infliction of pain' " ' before it violates the Eighth Amendment. Hallett v. Morgan 296 F.3d 732, 745 (2002) quoting Estelle, 429 U.S. at 104, 97 S.Ct. 285 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)); see also Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998). Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*).

Plaintiff alleges that in July and August of 2003, he advised Dr. Wagner that the officers were depriving him of his psychiatric medication, but that Dr. Wagner failed to take the necessary steps to issue Plaintiff his medication. (Doc. 20, pg. 11.) Plaintiff alleges that in mid August of 2003, he saw another physician who confirmed that Plaintiff was not receiving his medication, issued Plaintiff the medication, and then made the necessary arrangements and authorization for Plaintiff to be rehoused to a medication Ad-Seg building. (Id., pg. 12.) Several days after being re-housed, Plaintiff saw Dr. Wagner who asked Plaintiff why he went over her head to be rehoused, to which Plaintiff responded that she was now included in his lawsuit. (Id., pg. 13.) Liberally construed, Plaintiff's allegations show that he had been prescribed "psychotic medication," that Dr. Wagner failed to take the necessary steps to issue Plaintiff this medication, and that, as a result, Plaintiff's weight "changed drastically," and he suffered from "excruciating" side affects and feelings that he was "going crazy." (Doc. 20, pg. 11.) Thus, Plaintiff states a cognizable claim against Dr. Wagner for deliberate indifference to his serious medical needs.

### 3. *Fifth Amendment*

Plaintiff states that his third claim for relief is against Warden Scribner and Associate Warden Ortiz for not taking the necessary steps to have Plaintiff's allowable property and legal documents issued to him, in violation of the Takings Clause and his right to access the courts under the Fifth Amendment. Plaintiff received these items "eleven (11) months later" despite

having active cases in three courts.  (Doc. 20, pp. 16-17.)

### a. Takings Clause

The Takings Clause of the Fifth Amendment "limits the government's ability to confiscate property without paying for it," and "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal quotations and citation omitted).

Plaintiff's personal property and/or legal documents were not confiscated by defendants for public purpose and his Takings claim fails as a matter of law.  See Kelo v. City of New London, Connecticut, 545 U.S. 469, 477-80 (2005).

### b. Access to Court

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002).  For backward-looking claims such as that at issue here, Plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit."  Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007).

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354, 116 S.Ct. at 2181.  Inmates do not enjoy a constitutionally protected right "to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."  Id. at 355, 2182.  Rather, the type of legal claim protected is limited to direct criminal appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to vindicate basic constitutional rights.  Id. at 354, 2181-82 (quotations and citations omitted).  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id. at

355, 2182 (emphasis in original).

Plaintiff's claim that he was denied access to the courts is not cognizable as he fails to allege both the type of legal claim(s) that he was pursuing and any factual basis to satisfy the injury requirement.

Further, the mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence does not state a claim for violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996). Prison officials may, consistent with the First Amendment, open mail from attorneys in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-7 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). In Wolff v. McDonnell, the Supreme Court noted that inspecting mail from attorneys in the presence of the inmate did all, and perhaps even more, than the Constitution requires. Id. at 577. The issue of whether or not prison officials may also, consistent with the First Amendment, open and visually inspect mail from attorneys outside the presence of the prisoner has not been decided by the Supreme Court or by the Ninth Circuit. In Wolff v. McDonnell, the legal mail at issue was mail sent to respondent from his own attorney. Correspondence between an attorney and a client is entitled to special protection under the attorney-client privilege. "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)).

Plaintiff alleges that, on July 21, 2004, he was issued "legal mail" documents that had been filed on May 19, 2004, which had been opened out of his presence and appeared to have been read. (Doc. 20, pg. 14.) Vagueness as to the origin of the "legal mail" documents renders this claim incognizable.

### 4. *State Law Claims*

#### a. **California Penal Code §§ 118.1, 132, 133, 134 & CDC California Code of Regulations §§ 3338, 3339**

14

In the First Amended Complaint, Plaintiff alleges violations of California Penal Code sections 118.1, 132, 133, and 134. Section 118.1 makes the filing of a false report by a peace officer punishable by imprisonment in the county jail for up to one year, or in the state prison for one to three years. Section 132 makes it a felony for anyone to offer forged, altered, or ante-dated book, document, or record. Section 133 makes it a misdemeanor for anyone to deceive a witness with the intent to affect that witness' testimony. Section 134 makes it a felony for anyone to prepare false documentary evidence with intent to produce it as genuine or true at a trial, proceeding, or inquiry authorized by law.

A private right of action under a criminal statute has rarely been implied. Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979). Where a private right of action has been implied, "'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" Chrysler Corp., 441 U.S. at 316 (quoting Cort v. Ash, 422 U.S. 66, 79 (1975)). The court has reviewed Penal Code sections 118.1, 132, 133, and 134 and there is no indication that civil enforcement of any kind is available to Plaintiff. Cort, 422 U.S. at 79-80; Keaukaha-Panaewa Cmty. Ass'n v. Hawaiian Homes Comm'n, 739 F.2d 1467, 1469-70 (9th Cir. 1984). Accordingly, Plaintiff fails to state a claim upon which relief may be granted under state law based on the alleged violations of sections 118.1, 132, 133, and 134.

In addition to the Penal Code violations, Plaintiff alleges that Defendants violated Title 15 of the California Code of Regulations sections 3338 (addressing hearings on segregated housing orders) and 3339 (addressing release from and retention in Ad-Seg). The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations. The Court has found no authority to support a finding that there is an implied private right of action under Title 15 and Plaintiff has provided none. Given that the statutory language does not support an inference that there is a private right of action, the Court finds that Plaintiff fails to state any claims upon which relief may be granted based on the violation of Title 15 regulations. Further, any of Plaintiff's claims regarding his placement and/or retention in Ad-Seg, in a 1983 action such as this, are properly addressed, as discussed above, under the Federal

Constitution.

## II. CONCLUSION

For the reasons set forth above, Plaintiff's complaint is dismissed, with leave to file a second amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his second amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's second amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended

complaint. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File a second amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file a second amended complaint and wishes to proceed only on the claims identified by the Court as viable/cognizable in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

**Dated:   April 30, 2009**          /s/  **William M. Wunderlich**
                                   UNITED STATES MAGISTRATE JUDGE