# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY LEE, | CASE NO. 1:05-cv-00802-LJO-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DR. WAGNER, | (ECF No. 77) |
| Defendant. | OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

**Findings and Recommendations on Defendant's Motion for Summary Judgment**

**I.  Background**

Plaintiff Bobby Lee ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's second amended complaint, filed June 1, 2009, against Defendant Wagner for deliberate indifference to medical needs in violation of the Eighth Amendment.

Currently before the Court is Defendant Wagner's motion for summary judgment filed on July 1, 2012.  On July 12, 2012, the Court provided Plaintiff with written notice of the requirements for opposing a motion for summary judgment, Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), and granted Plaintiff thirty days to file an opposition.  (ECF Nos. 79, 80.)  On July 19, 2012, Plaintiff requested an extension of time to file his opposition.  (ECF No. 81)  The Court granted Plaintiff's request and ordered him to file an opposition on or before August 20, 2012.  (ECF No. 82.)  On August 3, 2012,

Plaintiff filed a document entitled "Declaration of Bobby W. Lee: In Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment." (ECF No. 83.) The Court construes Plaintiff's filing on August 3, 2012, as his opposition to Defendant's motion for summary judgment. The motion for summary judgment is deemed submitted.[1]  Local Rule 230(l).

## II.      Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

---

[1] On February 27, 2013, the Court notified Defendant Wagner that it had not received Exhibit D, which reportedly was submitted under seal on July 2, 2012. The Court directed Defendant Wagner to submit the exhibit within seven (7) days. (ECF No. 85.) On February 28, 2013, Defendant complied with the Court's order and resubmitted the exhibit. (ECF Nos. 85, 86.) The Court does not find it necessary to allow Plaintiff additional time to respond. There is no indication in the record that Plaintiff did not receive a copy of the relevant exhibit.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to scour the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**A.  Summary of Relevant Allegations in Second Amended Complaint**

On June 23, 2003, Plaintiff was transferred to CSP-Corcoran and housed in the SHU based on his possible participation in an assault on staff at Salinas Valley State Prison. (Sec. Am. Compl. ¶ 13, ECF No. 27.) During the months of July and August 2003, Plaintiff spoke with his case manager, Defendant Dr. Wagner, on several occasions, and complained about being deprived of his CCCMS prescribed psychotic medications. Defendant Wagner failed to take the necessary steps to have Plaintiff issued his prescribed CCCMS medication. (Id. ¶ 17.)

**B.  Defendant Wagner's Statement of Undisputed Facts[2] ("DUF")**

1. Plaintiff is lawfully in the custody of the California Department of Corrections and Rehabilitation (CDCR), pursuant to a 2003 conviction for Kidnapping.
2. Plaintiff was received into the custody of the CDCR on April 9, 2003, at Wasco State Prison Reception Center.
3. On June 18, 2003, he was transferred from Wasco State Prison to Salinas Valley State Prison (SVSP).

---

[2] The Court construes Plaintiff's declaration in opposition as a separate statement of disputed facts. Local Rule 260(b). Accordingly, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's declaration.

3

4. On June 23, 2003, a Correctional Officer at SVSP was attacked and seriously injured. Plaintiff was suspected of being complicit in the attack.

5. On June 23, 2003, within hours of the attack, Plaintiff was transferred from SVSP to California State Prison Corcoran (CSP-Corcoran) by emergency transfer.

6. On April 18, 2003, a psychiatrist at Wasco State Prison prescribed Plaintiff Remeron, an anti-depressant medication used to treat depression.

7. Plaintiff took the Remeron medication regularly between April 20, 2003, and June 23, 2003.

8. When Plaintiff arrived at CSP-Corcoran he was placed in the highest level of security, the Security Housing Unit.

9. Although the Remeron prescription was valid through July 17, 2003, Plaintiff did not continue to receive his prescribed Remeron prescription at CSP-Corcoran, for reasons unknown.

10. Inmates in CDCR custody receive mental health screenings to determine whether they have a mental health condition requiring intervention and treatment. If an inmate requires mental health care treatment he will be included in the Mental Health Services Delivery System (MHSDS), and his status is noted on placement forms that are maintained in the inmate's central prison file.

11. Whether an inmate is cleared for general prison housing, or included in the MHSDS, is an important classification because it determines whether the inmate receives specialized intervention from mental health professionals, and other specific accommodations.

12. When inmates are screened for mental health concerns, they are assigned a score on the Global Assessment of Functioning (GAF) scale. This scale rates how a patient's mental condition affects their ability to function, on a scale between 0 and 100, with 0 representing a complete inability to function and 100 representing full functioning. A score of 70 is typically considered to be adequate functioning. A score below 70 may justify inclusion in the MHSDS.

13. When Plaintiff was received into CDCR custody on April 9, 2003, his initial housing

4

review checked the box noting that he had "psych concerns."

14. On April 11, 2003, following a mental health screening at Wasco State Prison Reception Center, Plaintiff was cleared for general housing, and was noted to have no mental health care concerns. As a result, he was not classified as a participant in the MHSDS.

15. Plaintiff's status as cleared for general housing with no mental health concerns was documented in a June 4, 2003, and June 5, 2003 Mental Health Placement Form, listing him as not meeting criteria for inclusion in the MHSDS. In this documentation, Plaintiff was recorded as having a GAF score of 70. When Plaintiff was transferred to SVSP, he was not included in the MHSDS.

16. Within a week of arriving at CSP-Corcoran, on June 30, 2003, Plaintiff was the subject of a Classification Committee meeting for the purpose of determining his custodial, medical, and mental health needs at CSP-Corcoran. The CSP-Corcoran classification staff reviewed Plaintiff's history, and saw that he was listed as not being included in the MHSDS as of April 11, 2003.

17. At the committee hearing, Plaintiff told the classification staff that he had previously been receiving anti-depressant medications, and he had not received the medication since arriving at CSP-Corcoran.

18. The classification committee referred Plaintiff for a review and clarification of his mental health status.

19. On July 3, 2003, a Licensed Clinical Social Worker evaluated Plaintiff, found his cognition and behavior to be within normal limits, and recommended maintaining Plaintiff at his current level of care.

20. On July 14, 2003, Plaintiff filled out a mental health screening form answering yes to many questions indicating possible mental health concerns.

21. Following this screening form, the psychiatric technician referred Plaintiff for further evaluation.

22. On July 30, 2003, Plaintiff was seen by a psychologist, Dr. Pickering. Dr. Pickering

indicated that Plaintiff reported having received anti-depressants at his last prison, and desired to continue the medication; however, Plaintiff's medical records were unavailable to verify this. Dr. Pickering indicated that Plaintiff may or may not require inclusion in the MHSDS.

23. Dr. Pickering completed a new Mental Health Placement Form, dated July 30, 2003, placing Plaintiff in the MHSDS. Dr. Pickering assessed Plaintiff a GAF score of 65.

24. On August 7, 2003, Plaintiff was seen by Psychologist, Dr. Chirauzzi, who assessed Plaintiff with a GAF score of 70, and indicated that Plaintiff did not require placement in the MHSDS.

25. On August 27, 2003, Plaintiff was seen by the psychiatrist, who issued him a regular prescription for Remeron.

26. Dr. Wagner is a psychologist, licensed by the State of California, who worked at CSP-Corcoran during July and August of 2003.

27. The first record of Dr. Wagner having any contact with Plaintiff occurred on July 24, 2003. At this time, Plaintiff had not been identified as requiring inclusion in the MHSDS, which Dr. Wagner noted for purposes of the Institution Classification Committee (ICC). She relayed the opinions of other mental health care providers showing that Plaintiff was within normal limits for cognition and function.

28. Dr. Wagner next saw Plaintiff on August 12, 2003. She experienced an initial confusion because Plaintiff was still housed in a non-mental health building, and Dr. Chirauzzi's August 7, 2003 notes indicated that Plaintiff had no significant mental health impairment. Nonetheless, when she saw Plaintiff on August 12, 2003, she listened to Plaintiff's concerns regarding his medication and followed up as to his correct placement.

29. During Dr. Wagner's investigation she learned that Plaintiff had recently been admitted to the MHSDS by Dr. Pickering, so she ensured that Plaintiff was scheduled for an evaluation with the psychiatrist for his medication needs, and ensured that Plaintiff was housed in a building commensurate with his documented mental health care status.

30. On August 19, 2003, Dr. Wagner responded to a prison grievance that Plaintiff filed

1  complaining that he had not received his anti-depressant medication since arriving at
2  Corcoran. Dr. Wagner confirmed that Plaintiff was scheduled for an appointment with a
3  psychiatrist on August 27, 2003, and informed Plaintiff of the appointment.
4  31. At no time did Dr. Wagner ever observe Plaintiff appearing to be experiencing a medical
5  or psychiatric emergency. If Dr. Wagner had observed Plaintiff experiencing a medical or
6  psychiatric emergency she would have obtained emergency care for him.
7  32. For all non-emergent circumstances, she could not control the speed with which the
8  psychiatrist responds to the referral to evaluate an inmate-patient to determine the need for
9  prescription anti-depressants.
10 33. As a psychologist, Dr. Wagner is not authorized to prescribe medications to patients.
11 34. Dr. Bylund is the Chief of Psychology at CSP-Corcoran. He has reviewed the record of
12 Plaintiff's mental health care between April and August 2003.
13 35. Based on his review, Dr. Bylund observed that Plaintiff was seen by a number of
14 mental health care providers between April and August 2003. The record of these contacts
15 reflects that the mental health symptoms Mr. Lee experienced during this time were
16 relatively minor. The diagnoses included no diagnosis, Adjustment Disorder, and
17 Depressive Disorder, NOS (not otherwise specified). His behavior, mood, hygiene and
18 cognition were usually within normal limits.
19 36. Dr. Bylund's opinion is that patients with the types of diagnoses and symptoms that
20 Plaintiff experienced between April and August 2003, may benefit from medication, but
21 medication is not essential to their adequate functioning. Oftentimes, symptoms may
22 spontaneously remit or ameliorate through structured psychotherapeutic treatment.
23 37. Based on Dr. Bylund's review of Plaintiff's mental health records, he believes that it may
24 have been beneficial for him to have continued the Remeron medication following his
25 transfer to CSP-Corcoran, but it was not necessary for his adequate mental health
26 treatment.
27 38. The records reflect that Plaintiff did not experience side effects as a result of
28 discontinuation of the Remeron. The data from the clinical trials of Remeron did not

suggest that abrupt withdrawal from Remeron would produce negative effects.

### III. Plaintiff's Eighth Amendment Claim

Liability under section 1983 exists where a defendant "acted under the color of state law" and deprived the plaintiff "of a right secured by the Constitution or laws of the United States." Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000). In order to be held liable, the defendant must have personally participated in the deprivation of the plaintiff's rights. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 834-35.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in

1  which prison physicians provide medical care." Id. (citation omitted).

2  In applying this standard, the Ninth Circuit has held that before it can be said that a
3  prisoner's civil rights have been abridged, "the indifference to his medical needs must be
4  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause
5  of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle,
6  429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a
7  medical condition does not state a valid claim of medical mistreatment under the Eighth
8  Amendment.  Medical malpractice does not become a constitutional violation merely because the
9  victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d
10 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate
11 indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.
12 1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support
13 a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

14     **A.  Defendant Wagner's Contentions**

15 Defendant Wagner argues that there is no evidence she was deliberately indifferent to
16 Plaintiff during the months of July and August 2003.  Defendant contends that she had a single
17 contact with Plaintiff on July 23, 2004, when she reported his mental health classification to the
18 ICC.  At that point, Plaintiff was not included in the MSHDS and his behavior and cognition were
19 within normal limits.  Subsequently, on July 30, 2003, Dr. Pickering, a psychologist, placed
20 Plaintiff in the mental MHSDS.

21 Defendant Wagner next saw Plaintiff on August 12, 2003.  She listened to Plaintiff's
22 concerns regarding his medication and followed up as to his correct placement.  During her
23 investigation, she learned that Plaintiff had been admitted to the MHSDS by Dr. Pickering, so she
24 ensured that Plaintiff was scheduled for examination by a psychiatrist and that he was housed in a
25 building commensurate with his documented mental health care status.

26 On August 19, 2003, Defendant Wagner responded to a prison grievance that Plaintiff
27 filed complaining that he had not received his anti-depressant medication since arriving at CSP-
28 Corcoran.  Defendant Wagner confirmed that Plaintiff was scheduled for an appointment with a

psychiatrist and informed Plaintiff of the appointment. Plaintiff saw the psychiatrist on August 27, 2003, and received a prescription for Remeron.

Defendant Wagner asserts that with the information available to her, she had no reason to believe that Plaintiff required additional, imminent mental health treatment. She concludes that her actions in investigating his mental health classification, ensuring that he was properly housed for his classification and checking on his referral to the psychiatrist were reasonable and appropriate. She did not have the power under state law to prescribe him medications. Defendant Wagner also argues that Plaintiff did not have a serious need for the anti-depressant. Defendant Wagner contends that Plaintiff's mental health records during July and August 2003 indicated that his cognition, behavior and hygiene were within normal limits and none of the mental health practitioners noted any serious mental health concerns.

As a final argument, Defendant Wagner asserts that she is entitled to qualified immunity. She contends that she acted reasonably by relying on Plaintiff's medical records and her own observations that Plaintiff was within normal limits of mental functioning and that she reasonably believed that Plaintiff did not have an imminent need for prescription anti-depressants. (ECF No. 77, pp. 6, 7-12.)

**B.     Plaintiff's Contentions**

Plaintiff counters that between June 23 and August 27, 2003, he informed various CSP-Corcoran officials that he suffered from mental illness and had been prescribed Remeron. Plaintiff maintains that Defendant Wagner was so informed beginning on June 24, 2003, but Plaintiff did not receive his first dosage of Remeron until August 27, 2003. Plaintiff claims that he was not provided the medications as a retaliatory measure. (ECF No. 83 at ¶¶ 8-10.)

**C.     Analysis**

Plaintiff's opposition does not create a genuine issue of material fact. Rather, in his opposition, Plaintiff asserts his medications were withheld in retaliation by prison officials who believed that he was involved in an attempt to murder a prison guard. Plaintiff does not assert that he had a serious medical need for psychiatric medications or that Defendant Wagner was deliberately indifferent to that need. (ECF No. 83.) Accordingly, Defendant Wagner is entitled to

judgment as a matter of law based on Plaintiff's opposition.

Nonetheless, construing Plaintiff's opposition in light of his second amended complaint, Plaintiff's apparent argument is that the delay he experienced in receiving his psychiatric medication from June 23, 2003 through August 27, 2003 constitutes deliberate indifference by Defendant Wagner. This argument fails for several reasons. First, there is no evidence that Defendant Wagner knew of Plaintiff's prior Remeron use in June 2003. Although Plaintiff declares that he informed Defendant Wagner that he suffered from mental illness and had been prescribed Remeron, Plaintiff's prison records indicate that Defendant Wagner did not have contact with Plaintiff until July 24, 2003. DUF 27: Def's Ex. D., p. 13. Accordingly, Defendant Wagner did not know of and disregard an excessive risk to Plaintiff's health or safety in June 2003. Farmer, 511 U.S. at 837 ("a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Second, there is no evidence that Defendant Wagner knew that Plaintiff had a mental health need, much less a medication need, in July 2003. According to the undisputed evidence, Defendant Wagner had contact with Plaintiff on July 23, 2003. DUF 27, Def's Ex. D, p. 13. At that time, Plaintiff had not been classified by Corcoran staff as requiring inclusion in the MHSDS or as requiring psychiatric medications and Defendant Wagner did not note any concerns on mental health status exam. DUF 27; Def's Ex. D, p. 13. As Defendant Wagner's July 23 contact with Plaintiff did not reveal any serious mental health need and she did not have additional contact with him in July 2003, she could not have been deliberately indifferent during that time period. Farmer, 511 U.S. at 837; Toguchi, 391 F.3d at 1057.

Third, there is no evidence that Defendant Wagner was deliberately indifferent to any mental health need in August 2003. According to the records, Defendant Wagner conducted an interview of Plaintiff on August 12, 2003. DUF 27-28; Dec. of B. Wagner ¶ 6. During the interview, Plaintiff reported that he should be in the mental health care program and should be receiving medications. Id.; Def's Ex. D, p. 16. Although the mental status exam conducted by

Defendant Wagner was within normal limits, she planned to follow-up on information regarding Plaintiff's mental health status. DUF 28; Def's Ex. D, p. 16. The next day, on August 13, 2003, correctional staff received information from Defendant Wagner that Plaintiff was classified as a participant in the MHSDS and Defendant Wagner ensured that he was housed in a building commensurate with his mental health care status. DUF 29; Dec. of B. Wagner ¶ 8; Def's Ex. D, p. 17. Thereafter, on August 19, 2003, Defendant Wagner responded to a prison grievance that Plaintiff filed complaining he had not received his anti-depressant medication since arriving at Corcoran. Defendant Wagner confirmed that Plaintiff was scheduled for an appointment with a psychiatrist on August 27, 2003, and informed Plaintiff of the appointment. DUF 30; Dec. of B. Wagner ¶ 9; Def's Ex. A, pp. 10-11. Plaintiff saw the psychiatrist as scheduled on August 27, 2003, and received a prescription for Remeron. DUF 25; Def's Ex. D, p. 18.

The undisputed evidence shows that in August 2003 Defendant Wagner was responsive to Plaintiff's complaints and ensured that not only was he placed in appropriate housing for his mental health needs, but also that he had access to a medical provider who could issue him any necessary and appropriate medication. In other words, nothing in the record supports the conclusion that Defendant Wagner acted with deliberate indifference to Plaintiff's mental health needs in August 2003. Although Plaintiff alleges that Defendant Wagner had the authority to ensure that he received medication, the uncontradicted evidence reflects that Defendant Wagner, as a psychologist, was not authorized to prescribe medications under state law.[3] DUF 33.

Finally, there is no indication that the approximate two month delay in receiving Remeron resulted in any harm to Plaintiff. Indeed, a delay in treatment alone does not violate the Eighth Amendment unless it causes substantial harm. Wood, 900 F.2d at 1335. Defendant argues that Plaintiff did not experience side effects as a result of discontinuation of the Remeron, citing mental health records for July and August 2003. Def's Ex. D, pp. 7, 13-18. Although Plaintiff alleges that he experienced "excruciating side effects," including weight loss, as a consequence of

---

[3] Additionally, there is no indication that Plaintiff's assertion regarding Defendant Wagner's authority as a psychologist is based on any personal knowledge or that he is competent to testify regarding the scope of such authority. See Fed. R. Evid. 601, 602.

the discontinuation of his Remeron medication (Sec. Amend. Compl. ¶ 18), Plaintiff fails to provide medical evidence to establish the source of his undocumented symptoms.  Plaintiff's conclusions as to the effect of discontinuation of Remeron medication are his personal lay opinion, and are insufficient to rebut Defendant's medical evidence.  Fed. R. Evid. 701.  As the undisputed facts demonstrate that any delay in receiving Remeron did not substantially harm Plaintiff, Defendant Wagner is entitled to summary judgment as to Plaintiff's claim of deliberate indifference in violation of the Eighth Amendment.

## IV.    Qualified Immunity

Defendant's final argument is that she is entitled to qualified immunity.  As the Court recommends granting Defendant's motion based on the foregoing analysis, the Court does not reach Defendant's argument that she is entitled to qualified immunity.

## V.    Conclusion and Recommendation

The Court finds that Defendant Wagner is entitled to judgment as a matter of law on Plaintiff's claim that she violated the Eighth Amendment.  Accordingly, the Court HEREBY RECOMMENDS that Defendant Wagner's motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **March 4, 2013**          /s/ Barbara A. McAuliffe
                              UNITED STATES MAGISTRATE JUDGE